UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 02-80094-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL DAVID HARLAND,

    Defendant.
_____/

NIGHT BOX FILED
NOV 22 2002
CLERK, USDC / SDFL / WPB

## FILED UNDER SEAL

## THE UNITED STATES' MOTION FOR UPWARD DEPARTURE UNDER THE UNITED STATES SENTENCING GUIDELINES

Pursuant to 18 U.S.C. 3553(b) and the United States Sentencing Guidelines §§ 5K2.0, 2G2.1, comment. (n.6), 2G2.2, comment. (n.2), 5K2.3, and 5K2.8, the United States of America, by and through its undersigned Assistant United States Attorney, respectfully moves for an upward departure based on aggravating factors not properly taken into account in defendant's Guideline range. In support thereof, the government states as follows:

The United States hereby gives notice to counsel for the defendant of its intent to seek an upward departure on any and all grounds set forth below. First, the United States seeks an upward departure under Guidelines § 5K2.0 and 2G2.2, comment. (n.2) for the defendant's multiple acts of sexual abuse and exploitation of E.H. and other minor victims that is not properly taken into account under Guideline § 2G2.2(b)(4). Second, the United States seeks an upward departure under Guidelines section 2G2.1, comment. (n.6B) because Harland's offense

involved more than 10 victims. Third, the United States seeks an upward departure based on Guideline § 5K2.3 because Harland inflicted extreme psychological injury on the victim, E.H. Finally, the United States seeks an upward departure based on U.S.S.G. § 5K2.8 because Harland's conduct was unusually cruel and degrading.

## STATEMENT OF FACTS

This case involves an international ring of child pornography manufacturers. The membership of the ring includes but is not limited to defendant, Michael David Harland ("Harland"), Lloyd Alan Emmerson ("Emmerson"), Paul Gordon Whitmore ("Whitmore"), Leslie Peter Bowcut ("Bowcut"), Daniel Boobar ("Boobar"), William Degelman ("Degelman"), Alberto Caselli a/k/a Dion ("Caselli"), and Dirk-Jan Prins ("Prins"). The victims are almost exclusively children of the members of the ring, however, in some instances the victims are friends or relatives.

On January 25, 2002, the Resident Agent Fresno California ("RA/Fresno") received information that an international investigation initiated by the Danish National Police had identified Lloyd Emmerson of Clovis, California as a suspected sexual abuser of children. On January 26, 2002, Emmerson was arrested on California state charges including sexual exploitation of a child under 14 years old, and use of a minor to engage/pose/model in sexual conduct, with a lewd conduct with a child under 14 years old.

Subsequently, Emmerson supplied the RA/Fresno with information identifying several individuals as producers of child pornography. Emmerson identified Michael David Harland as one of the manufacturers of child pornography. The Clovis Police Department mailed a CD-ROM containing pornographic images of E.H. seized from the computer of Lloyd Emmerson to U. S. Customs Special Agent Jack Watkins at RA/WPB. The CD-ROM contained a copy of the

2

files transmitted to him, by Harland, via computer, which contained numerous images of E.H. engaged in sexually explicit conduct.

On March 11, 2002, S/A Martin I. Ruiz de Gamboa and S/A Greg H.. Stine along with PBSO deputies effected a consent search on the residence of Michael David Harland. Harland admitted that he manufactured child pornography of E.H. and distributed it. Harland said he would wait until is current wife, Pamela Picoli and I.H. were not at home to take the pictures. Harland claimed he never penetrated or engaged in oral sex with E.H. Harland also said he never masturbated in front of E.H. Harland admitted having genital-genital sexual contact with E.H. as portrayed in several of the recovered pictures, specifically the picture titled P9090215.

Harland was asked whom he had sent or distributed the pictures of E.H. to. Harland advised that he had sent the images to three or four people he had met on the Internet. Harland recalled he had e-mailed the images to a man named "Lloyd" in Southern California and to someone else named "Paul".

On June 18, 2002, Detective Patrick Paige and S/A Watkins received authorization from Mornigstar Nursery to perform a forensic analysis of the Maxtor computer hard drive that Harland used while he was employed at Mornigstar. Detective Paige prepared a 58 page forensic report of the Mornigstar computer hard drive that included numerous images of child pornography of E.H., J.E., C.E., M.W., and V.B. In addition, Det. Paige found numerous ICQ chat logs spanning several years of communications between Harland and members of the ring: Emmerson, Whitmore, Boobar, Prins, and Caselli.

1.   **Lloyd Emmerson a/k/a "Lotus"**

Lloyd Emmerson and Harland communicated via ICQ chats from at least as early as

September 20, 1999 to February 15, 2001.[1] During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography of J.E., C.E., A. LNU, T.T., V.B., M.G., and A.G that Emmerson had manufactured. During these ICQ chats Harland would request that Emmerson manufacture child pornography of J.E. engaged in sexually explicit acts. Harland and Emmerson repeatedly discussed various ways of finding children that would be available to pose for the production of child pornography. Harland told Emmerson that he should engage in sexual activity with J.E. and C.E. On January 26, 2002, Emmerson was arrested and charged with manufacturing child pornography. The investigation of Emmerson has uncovered 24 minor female victims.

2. **Paul Whitmore a/k/a "Daj," "Digitalguy," & "PaulsArt"**

Paul Whitmore, a psychotherapist at a private school for children with severe behavior disorders, and Harland communicated via ICQ chats from at least as early as September 6, 2000 to February 15, 2001.[2] During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography of M.W. and T. LNU that Whitmore had manufactured. Whitmore also photographed C.S., and K.LNU. During these ICQ chats Harland would request that Whitmore manufacture child pornographic images of M.W. engaged in specific sex acts such as masturbating Whitmore or slowly undressing. When Whitmore informed Harland that M.W. sometimes became afraid when she engaged in those acts, Harland explained that he was excited by her fear. Harland and Whitmore repeatedly discussed various

---

[1] Filed separately under seal is Exhibit 1, an ICQ chat between Emmerson and Harland. Emmerson uses the screen name "Lotus."

[2] Filed separately under seal is Exhibit 2, an ICQ chat between Whitmore and Harland. Whitmore uses the screen names "Daj," "PaulsArt," and "Digitalguy."

4

ways of finding children that would be available to pose for the production of child pornography. On January 27, 2002, Whitmore was arrested on state charges and currently faces 27 counts of aggravated child abuse. The investigation of Whitmore has uncovered 8 minor female victims.

### 3. Daniel Boobar a/k/a "loltot"

Daniel Boobar and Harland communicated via ICQ chats from at least as early as June 3, 1999 to January 25, 2001.[3] During this time Harland distributed images of child pornography of E.H. that he manufactured to Boobar. In at least one instance Harland engaged in a web video teleconference in which Boobar masturbated while watching, in real time, Harland engage in simulated sexual intercourse on E.H. On August 17, 1999, at 12:57, in an ICQ chat, Boobar and Harland discuss the video teleconference as follows:

**Boobar:** "it's weird because my ultimate fantasy has always been to see a little girl that I liked, and then have her mommy or daddy notice me looking at her, and then have them play along by helping me get a better show. . . . . now that fantasy has basically . . . ."

**Harland:** That's true, we will have to work on more

**Boobar:** I hope E.H. wasn't watching me on the screen though

**Harland:** I think she glimpsed it but didn't comment, she was having fun.

**Boobar:** next time maybe you can turn on the audio, so I can hear her sweet voice too!

**Boobar:** I'll try, sometimes it doesn't work well.

On November 1, 2002, Boobar was arrested for conspiracy to manufacture child pornography. The investigation of Boobar is ongoing but has not uncovered any victims to date.

---

[3] Filed separately under seal is Exhibit 3, an ICQ chat between Boobar and Harland. Boobar uses the screen name "loltot."

### 4. Alberto Caselli a/k/a "Dion"

Alberto Caselli and Harland communicated via ICQ chats from at least as early as August 30, 2000 to January 2, 2001.[4] During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography that Caselli had manufactured. During these ICQ chats Caselli requested images of E.H. engaged in specific sex acts such as performing oral intercourse on Harland. Harland admitted that he had engaged in masturbation with E.H. Harland also encouraged Caselli to engage in sex acts with L.LNU. Caselli had not been arrested and is believed to live in Europe. Caselli was introduced to the ring by Dirk-Jan Prins.

### 5. Dirk-Jan Prins a/k/a "Dirk-Jan"

Dirk-Jan Prins and Harland communicated via ICQ chats from at least as early as October 5, 2000 to November 17, 2000.[5] During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography of Lo.LNU. During these ICQ chats Harland and Prins discuss traveling to third world countries to manufacture child pornography. Harland declared that "one day" he will "teach" E.H. how to have sexual intercourse. Prins explicitly expresses his desire to engage in sexual conduct with E.H. including vaginal and anal sex. Prins was arrested on February 5, 2002.

## ARGUMENT

### I. THIS COURT IS AUTHORIZED TO DEPART ABOVE THE GUIDELINES SENTENCE WHERE AGGRAVATING CIRCUMSTANCES ARE PRESENT

---

[4] Filed separately under seal is Exhibit 4, an ICQ chat between Caselli and Harland. Caselli uses the screen name "Dion."

[5] Filed separately under seal is Exhibit 5, an ICQ chat between Prins and Harland. Prins uses the screen name "Dirk-Jan."

6

In Harland's PSI, the Guideline Sentence for Group A - Counts One thorough Thirty-nine in ¶¶ 33 through 39 and Group B - Count Forty in ¶¶ 40 through 49 do not adequately take into account the multiple victims and multiple acts of child abuse and exploitation committed by Harland. Pursuant to U.S.S.G. 5K2.0, sentencing departures are appropriate when there are factors "that have not been given adequate consideration by the Commission," or if "in light of unusual circumstances, the guideline level attached to the factor is inadequate." If a factor is not mentioned in the guidelines, the court must decide whether it is sufficient to take the case out of the guideline's heartland. Koon v. United States, 518 U.S. 81 (1996). Departures should only occur when there is something atypical about the defendant or the circumstances surrounding the commission of the offense. United States v. Miller, 146 F.3d 1281 (11th Cir. 1998).

The Sentencing Reform Act authorizes departure from the guidelines when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. ·3553(b); see also United States v. Taylor, 88 F.3d 938, 941 (11th Cir. 1996) (noting that departures from the Guidelines are acceptable where a case is "atypical," i.e., "where the conduct significantly differs from the norm") (quoting Koon v. United States, 518 U.S. 81 (1996)); U.S.S.G. § 5K2.0.

In Koon, the Supreme Court set forth the criteria used to judge whether a departure from the Guidelines is warranted in a given case: (1) what features of the case make it unusual such that it is outside the " heartland" of Guidelines cases; (2) has the Sentencing Commission forbidden departure based on those features; (3) if not, has the Commission encouraged departures based on those features; and (4) if not, has the Commission discouraged departures

based on those features. See Koon, 518 U.S. at 95; Taylor, 88 F.3d at 945. As the Supreme Court held:

> If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.

Koon, 518 U.S. at 95. See also Taylor, 88 F.3d at 945.

## II. THE SERIOUSNESS OF THE SEXUAL ABUSE AND EXPLOITATION OF THE VICTIMS WARRANTS AN UPWARD DEPARTURE

This Court may depart upward based on the serious nature of Harland's sexual abuse and exploitation of E.H., V.B, C.E., J.E., M.W., T. LNU ,C.S., K.LNU, Lo.LNU, L.LNU, M.G., and A.G and other minor victims even though the adjusted offense level of Count 40 already incorporates a five-level increase for seriousness under U.S.S.G. § 2G2.2(b)(4). Under U.S.S.G. § 2G2.2, comment. (n.2), "an upward departure may be warranted if the defendant received an enhancement under subsection (b)(4) but that enhancement does not adequately reflect the seriousness of the sexual abuse or exploitation involved." In United States v. Hersh, 297 F.3d 1233, 1251 (11th Cir. 2002), the court found that an upward departure was appropriate because the defendant's history of sexual abuse, for sexual acts that were charged and uncharged, was not adequately reflected under U.S.S.G. § 2G2.2(b)(4). In Hersh, the Court cited United States v. Stewart, 210 F.3d 442 (6th Cir. 1999) in which the Sixth Circuit affirmed a district court's additional two-level departure where the district court found that § 2G2.2 did not reflect the degree of exploitation and abuse because the defendant's sexual exploitation of the

victim was aggravated, prolonged, and repeated over several years.

In this case, it is difficult to imagine how Harland could have engaged in a more extreme form of sexual exploitation of a minor. Harland was a leading member of a child sex ring that manufactured child pornography. In this role, Harland photographed E.H. engaged in sexually explicit conduct, in some instances simulating sexual intercourse on her, and distributed the images to other pedophiles around the country and around the world. Accordingly, an upward departure is appropriate because the level of sexual abuse and exploitation that occurred in this case is not adequately reflected under U.S.S.G. § 2G2.2(b)(4).

### III. THE LARGE NUMBER OF VICTIMS OF THE SEXUAL ABUSE AND EXPLOITATION WARRANTS AN UPWARD DEPARTURE

This Court may depart upward based on the number of victims that Harland sexually abused and/or exploited in this case. Under U.S.S.G. § 2G2.1, comment. (n.6B), "an upward departure may be warranted if the offense involved more than 10 victims." In this case, Harland abused or exploited the following minors: of E.H., V.B, C.E., J.E., M.W., T. LNU ,C.S., K.LNU, Lo.LNU, L.LNU, M.G., and A.G and other minor victims. The ICQ chats powerfully reveal Harland's abuse and exploitation of these minors.

### IV. THE VICTIM'S EXTREME PSYCHOLOGICAL INJURY WARRANTS AN UPWARD DEPARTURE

An upward departure for extreme psychological injury to E.H. is appropriate. U.S.S.G. 5K2.3; United States v. Dolloph, 75 F.3d 35 (1st Cir.), cert. denied, 517 U.S. 1228 (1996) (psychologist testified that child victim of sexual abuse had suffered psychological damage "more severely than most children that I have seen that have experienced the nature and duration of what she experienced"); United States v. Ellis, 935 F.2d 385, 396 n.12 (1st Cir.), cert. denied,

502 U.S. 869 (1991) (counselor testified that child victim of sexual abuse had suffered extreme stress, fear of physical harm to herself and her family, and guilt over the traumatic experiences); United States v. Chatlin, No. 95-10316, 1996 WL 155156 (9th Cir. Apr. 3, 1996) (where defendant sexually abused child, upward departure for extreme psychological injury to child warranted based on showing that child suffered from post traumatic stress disorder as a result of the abuse, had to undergo intensive therapy two to three times a week, and suffered nightmares and flashbacks). Under seal the United States has filed a copy of the interview of E.H. conducted just after Harland's arrest by child care specialist Linda Davies of the Florida Department of Children and Families.

## V. THE DEFENDANT'S CONDUCT WAS UNUSUALLY CRUEL AND DEGRADING

The next basis for upward departure is U.S.S.G. § 5K2.8, because Harland's conduct was unusually cruel and degrading. Guideline § 5K2.8 provides, in pertinent part, that

> [i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of the victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

U.S.S.G. § 5K2.8.

The ICQ chats and computer images document Harland's extreme conduct and demonstrate his cruel and degrading treatment of E.H. In the ICQ chats, Harland repeatedly regales members of the ring with stories of his degrading conduct, such as ejaculating on 4 year old E.H. and photographing it. Those photographs, like all images of child pornography, are being traded on the internet even though Harland is incarcerated. The degrading images will out live Harland and E.H. and will be traded among pedophiles for the rest of E.H.'s life. This prolonged humiliation warrants an upward departure in this case.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court depart upward to account for the victim's extreme psychological injury and to reflect the defendant's extreme sexual abuse and exploitation of the minor victims.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: LOTHROP MORRIS
ASSISTANT U.S. ATTORNEY
Florida Bar # 0095044
500 Australian Avenue, Suite 400
West Palm Beach, FL 33401
(561) 820-8711
(561) 820-8777 (FAX)
LOTHROP.MORRIS@USDOJ.GOV

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered via mail this 25th day of November, 2002, to:

Scott Suskauer, Esq.
1601 Forum Place, Suite 1200
West Palm Beach, Fl 33401
(561) 687-7866

Virginia S. Cataldo
United States Probation Office
501 South Flagler Drive, Suite 400
West Palm Beach, Fl  33401

By: LOTHROP MORRIS
ASSISTANT U.S. ATTORNEY